## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| KARI C. WOODELL, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO. 1-18-CV-05245-TWT |
| SUNRISE MEDICAL SOLUTIONS, INC., BRIAN ADKINS and TODD MAY, | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Since 1938, Americans have held the right to receive overtime compensation after completing 40 hours of service to their employer in a given week. As this Court is well-aware, the rights provided under the Fair Labor Standards Act are of such high priority that private settlement of claims will not be enforced in the absence of Court or Department of Labor ("DOL") supervision.

Plaintiff Kari Woodell, a single mother, has been deprived of her rights to fair compensation and was unequivocally fired only moments after protesting her employer's unlawful actions. Ms. Woodell is entitled to summary judgment on Count I – Failure to Pay Overtime Wages Pursuant to 29 U.S.C. § 207 and on

1

Defendant Adkins' personal liability under the FLSA. Summary judgment is warranted on Count I as to both Defendants Sunrise Medical Solutions ("Sunrise") and Defendant Adkins because Defendants improperly treated Ms. Woodell as an exempt outside sales representative as she spent, at Defendants' insistence, most of her time in the office. Ms. Woodell was required to maintain strict office hours throughout her tenure and was threatened with termination and loss of pay when she failed to meet Defendant's' strict office attendance requirements. Ms. Woodell is entitled to summary judgment on her overtime claims against Defendants Sunrise and Adkins and her remaining claims reflect factual disputes that must proceed to trial.

### Factual Background[1]

*Plaintiff joins Sunrise Medical Solutions.* Ms. Woodell began working at Sunrise in late 2015. Sunrise is a reseller of goods and services for Workers' Compensation benefits for injured workers. Sunrise is equally owned by Defendants Adkins and May, and Adkins serves as Sunrise's CEO. Ms. Woodell was hired by Adkins, during a meeting in the kitchen of a mutual friend. Prior to joining Sunrise, Ms. Woodell had no sales or medical experience.

---

[1] All citations to the record and identification of exhibits attached to Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment are provided in Plaintiff's contemporaneously-filed Statement of Undisputed Material Facts.

Defendant Adkins hired Ms. Woodell for a position described in a written job description created by Defendant Adkins. The job description was not provided to Ms. Woodell at the time she was extended and accepted the offer. Ms. Woodell was offered a starting salary of $30,000, plus a phone and car allowance. Ms. Woodell was eligible for commissions according to a tiered commission structure. For Ms. Woodell to receive any commissions, Sunrise had to receive revenue of more than $20,000 a month on non-"house" accounts she brought in. Ms. Woodell was responsible for assisting with these "house accounts" although she received no commissions relating to their sales for the first 90 days, and after that, only if she increased month-on-month average revenue.

_Defendants' Expectations of Plaintiff._ During her first full year of employment, Defendants' only expectation of Ms. Woodell was to make 25 contacts per day and do "as many outside things as possible." Defendant Adkins admitted that these "contacts" were not expected to be face-to-face meetings; he wanted these "contacts" to be generated _from the Sunrise office_. If Ms. Woodell failed to report the daily list of contacts to Defendant Adkins, she was subject to discipline. Defendants also did not set any sales goals for Plaintiff for the entire first year. Defendant Adkins considered it important for Ms. Woodell to be _in the_

*office* to learn the industry. According to Defendant Adkins, she *couldn't* do the job by working primarily outside the Sunrise office.

Defendants required Ms. Woodell to clock-in and clock-out *from her office computer* each day. "[Plaintiff was required to] send an email…reporting the times she reported to and completed work each day *in the office* and provide updates regarding sales meetings she conducted outside the office" Defendant Adkins told Ms. Woodell that her pre-determined working hours were from 8 a.m. until 5 p.m. each work day. Ms. Woodell was required to clock in at the office before traveling to any out-of-office sales meetings, and if she met with potential customers early in the day, she was required to clock out *from her office computer* at the end of the day. She was expected to be in the office at all times that she was not at an out-of-office sales meeting. Adkins admits he knew where Ms. Woodell was and what she was doing when she was both in and out of the office. When Ms. Woodell did not comply with Defendants' clock-in/clock- requirements, Defendants reprimanded her. Defendants failed to maintain comprehensive time records of Plaintiff's work hours.

*Commissions.*  During her first month of employment, Ms. Woodell was not eligible for any commissions. For the first 90 days of her employment, Ms. Woodell did not receive *any* commissions. No commissions appeared on her

paystubs until *fourteen* months after she began employment. Soon after that, Defendants began *withholding* commission from Ms. Woodell, not based upon sales, but *because she came into the office late and left early one day in July 2016*. In the last six months of 2016, Plaintiff sold $137,000 worth of services, yet did not receive any commissions as discipline for her "inconsistency" in her recording of her daily attendance in the office. Over the course of Ms. Woodell's two-year employment with Sunrise, she received just *four* commission payments. Despite working long hours most weeks, Ms. Woodell never received overtime pay.

*Plaintiff's Day-to-Day Activities.*  As part of her job, Ms. Woodell attended out-of-office sales events, such as lunches, nail salon parties, happy hours, and approximately six sales conferences per year.  Each of these events had to be approved, in advance, by Defendant Adkins. Most days, however, Ms. Woodell was required to simply spend hours *in the office* calling potential customers and sending emails.

*Defendant Adkins' Role.* As CEO of Sunrise, Defendant Adkins was responsible for sales, marketing, payroll, staff management, and processing orders. As he put it, he "[has his] hand in pretty much everything." He was responsible for preparing the employee handbook which governed employee behavior, as well as for setting Plaintiff's salary and her commission compensation structure.

Defendant Adkins also controlled employee discipline and resolution of human resources issues. In a company of just three employees (including Defendant Adkins himself), Defendant Adkins was undisputedly considered the boss.

As stated in the job description Defendant Adkins prepared, he commanded control of all client and travel expenses:

- …all overages must be approved by Brian F. Adkins or it will be deducted from your paycheck…IF IN DOUBT IF SOMETHING WILL BE COVERED OR NOT, ASK BRIAN ADKINS…"
- All overnight accomodations must be approved by Brian F. Adkins…
- Health Care Coverage – Not offered.
- 401K – not offered.

When travel was required, Defendant Adkins would require Ms. Woodell to share a hotel room with him.

*Prior Outside Sales Representatives.*   Before hiring Plaintiff, Defendants employed two outside sales representatives: Henry Hall and Jennifer Brockman. Mr. Hall was paid a salary of about $60,000. Ms. Brockman, who succeeded Mr. Hall, was paid a salary of about $70,000, plus commissions. Neither were required to be present in the Sunrise office.

## Legal Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.

6

18303851v6

R. Civ. P. 56. All facts and inferences are considered in the light most favorable to the nonmoving party. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (citation omitted). Whether an employee's duties fall within a FLSA exemption is a question of law. *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1225-26 (5th Cir. 1990); *Solis v. Washington*, 656 F.3d 1079, 1083 (9th Cir. 2011); *Pippins v. KPMG, LLP*, 759 F.3d 235, 239 (2nd Cir. 2014). The employer has the burden of proving that an employee is exempt from the FLSA protections. *Gregory v. First Title of America, Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009).

### Argument & Citations to Authority

Summary judgment should be granted to Ms. Woodell for two reasons. *First,* while Defendants assert that Ms. Woodell was an exempt employee under the FLSA's outside sales exemption, this position is completely undermined by the undisputed facts. Ms. Woodell's primary duties were not outside sales, in part because her employment lacked two crucial characteristics of being an outside sales representative: (a) freedom from supervision and (b) significant commission compensation for her work. Further, Ms. Woodell was not "customarily and regularly" engaged away from the employer's place of business in each week of her employment. Ms. Woodell most often worked in Defendants' office and Defendants. Indeed, in her first year of employment, Defendants *expected* Ms.

Woodell to work primarily in the office. The record is clear that Plaintiff's employment was incompatible with the outside sales exemption, and Defendants' failure to pay overtime was violative of the FLSA.

*Second*, Defendant Adkins is an "employer" under the FLSA and must be held personally liable for Defendants' failure to pay overtime. Adkins singularly controlled the method and manner of Ms. Woodell's terms of employment and held significant power over day-to-day job duties and payment of wages.

### A.    The FLSA and the Outside Sales Exemption

Congress enacted the FLSA to protect employees by guaranteeing minimum wage and overtime payments. 29 U.S.C.A. §§ 206, 207; *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012). Under the FLSA, a non-exempt employee who works more than forty hours in a work week is entitled to overtime. 29 U.S.C.A. §§ 206, 207. The employer has the obligation to maintain contemporaneous records of all hours for which the employee is allowed or suffered to work. 29 U.S.C.A. § 211(c).  Here, Defendants failed to accurately track Ms. Woodell's hours or to pay her any overtime. Defendants have argued that Ms. Woodell was not entitled to overtime compensation because she was exempt from the FLSA's overtime requirements as an "outside salesman" pursuant to 29 U.S.C.A. § 213(a)(1). (Defs.' Sixth Aff. Def.) Defendants bear the burden of proof

8

on the application of this exemption. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008). This defense fails as a matter of law.

For an employee to be exempt as an outside sales representative, (1) the employee's "primary duty [must be either] making sales within the meaning of Section [203(k)] … or obtaining orders or contracts for services… for which a consideration will be paid by the client or customer," and (2) the employee must be "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. §541.500 (internal numbering and formatting omitted).[2] "The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls." 29 C.F.R. §541.502. The outside sales exemption must be fairly construed so that it applies to those plainly within its terms and spirit. *Gregory*, 555 F.3d at 1302

---

[2] "The FLSA does not itself define the term "outside salesman." Rather, it exempts from wage and hour requirements "any employee employed ... in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary )." 29 U.S.C. § 213(a)(1) (emphasis added). Thus, we must look to relevant Labor Department regulations to answer the question. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007) (explaining that "the FLSA explicitly leaves gaps" to be filled by regulations)." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 170 (2012) (Breyer, J. dissenting).

(citing *Nicholson v. World Business Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997)). *See also, Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) (exemptions are to be given their fair interpretation).

Congress established the outside sales representative exemption because of an incompatibility between the FLSA's compensation requirements and the individualistic nature of outside sales representatives' work. *Hodgson v. Greene's Propane Gas Serv., Inc.*, Civil Action No. 2502, 1971 WL 692 at *15 (M.D. Ga. Feb. 16, 1971); *Jewel Tea Co. v. Williams*, 118 F.2d 202, 207 (10th Cir. 1941). The purpose behind the exemption is simple:

> 'such a salesman, to great extent, works individually. There are **no restrictions respecting the time he shall work** and he can earn as much or as little, within the range of his ability, as his ambition dictates.' An outside salesman's extra compensation comes in the form of commissions, not overtime, and because most of the salesman's work is performed away from the employer's place of business, **the employer often has no way of knowing how many hours an outside salesman works**.

*Jewel Tea*, 118 F.2d at 207-08 (emphasis added). This reasoning was recently affirmed by the Supreme Court in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 166 (2012) (holding the FLSA's outside sales exemption is premised on the belief that exempt workers typically earn salaries "well above the minimum wage" and enjoy other benefits that "set them apart from the non-exempt workers

entitled to overtime pay.") Ms. Woodell's relatively low salary and internally-focused job duties at Sunrise were simply not the type of duties that Congress and the courts contemplate falls within this exemption.

### B.     Plaintiff's Primary Duty Was Inside Sales.

Under Eleventh Circuit precedent, to fall within the outside sales exemption, "an employee's 'primary duty' must be the performance of exempt work." *Gregory*, 555 F.3d at 1302-03.  The term "primary duty" means:

> the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.

29 C.F.R. § 541.700.

Factors considered by the Eleventh Circuit[3] when determining the primary duty of an employee include, but are not limited to, (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages

---

[3] Defendants will undoubtedly be tempted to mistakenly rely on *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 132 S.Ct. 2156 (2012) to attempt to support the application of the outside sales exemption to Ms. Woodell. Any reliance on this decision is severely misplaced as the pharmaceutical sales representatives in the *Christopher* decision performed vastly different duties than Ms. Woodell and the record therein revealed they were free from the ongoing supervision faced by Ms. Woodell.

18303851v6

paid to other employees for the kind of nonexempt work performed by the employee. *Id.*; *Gregory* at 1303. The record is clear that each of these factors favors Ms. Woodell and undermines any claim of an exemption from the FLSA's overtime requirements.

a. *Defendants heavily supervised Plaintiff.*

Defendants tracked nearly every moment of Ms. Woodell's whereabouts during the work day through the use of a shared Outlook calendar, email clock-in/clock-outs, text messages, phone calls, and face-time in the Sunrise office. DOL regulation 29 C.F.R. § 541.700 specifically enumerates freedom of an employee to control his or her schedule away from supervision as a significant factor in evaluating whether an employee is an outside sales representative.

Ms. Woodell had virtually no freedom to control her own schedule or work independent from Defendants' supervision. In Defendants' own words, "[Ms. Woodell was required to] send an email…reporting the times she reported to and completed work each day in the office and provide updates regarding sales meetings she conducted outside the office" On multiple occasions, Defendants emphasized to Ms. Woodell that her pre-determined working hours were from 8 a.m. until 5 p.m. Ms. Woodell was required to clock in from her office-based computer before out-of-office sales meetings, and if she met with potential

customers early in the day, she was required to clock out from her office computer at the end of the day. She was expected to be in the office at all times that she was not in an out-of-office sales meeting approved by Defendant Adkins. When Ms. Woodell did not comply with Defendants' clock-in/clock-out requirements, Defendants reprimanded her and, eventually withheld her commissions for several months as punishment. This lack of freedom is incompatible with both the purpose and the required fair construction of the outside sales exemption. *Gregory*, 555 F.3d at 1302.

During her first full year of employment, Defendants' only expectation of Ms. Woodell was to make 25 contacts per day and do "as many outside things as possible." Defendants did not set any sales goals for Ms. Woodell for the entire first year. Defendant Adkins acknowledged in his deposition that he found it important for Ms. Woodell to be ***in the office*** to learn the industry—she couldn't do the job solely outside. Defendants have acknowledged that Ms. Woodell's lack of experience precluded her from primarily working away from the Sunrise office. Moreover, during her first year of employment, Defendants expected her to work primarily inside the office.

In *Reyes v. Goya Foods, Inc.*, the Eleventh Circuit found an employee qualified as an outside sales representative because he "did not report to…offices

on a regular basis except to attend monthly sales meetings, worked with little supervision, [and] set their own schedules." 549 F.App'x. 876, 878 (11th Cir. 2013). Other courts likewise find that managing one's own work tasks and agenda are essential to holding an employee exempt. *See generally Nielsen v. DeVry, Inc.*, 302 F.Supp.2d 757 (W.D. Mich. 2003). Cases such as this demonstrate that working independently and away from the employer's facility is a *fundamental consideration* in evaluating the outside sales exemption. These facts are virtually the exact opposite of Plaintiff's day-to-day working environment and undermine any claimed exemption from overtime.

In *Hurt v. Commerce Energy, Inc.*, an employer required employees to report to the office every morning, prohibited them from working without a supervisor, and pre-determined their work week and days. No. 1:12-CV-00758, 2013 WL 4427257 at *7 (N.D. Ohio July 23, 2015). Due to the highly supervised nature of the employment, the court reasoned the employees' work better comported with hourly wage requirements than commission-based compensation. *Id.* As in *Hurt*, Defendants closely watched and scrutinized Ms. Woodell's movements, requiring her to go to the office every morning and evening to monitor her working hours and whereabouts. Ms. Woodell's highly-supervised schedule supports judgment as a matter of law in her favor.

14

   b.  *Plaintiff's compensation was not significantly affected by commission.*

The outside sales representative exemption rationale clearly emphasizes the importance of commissions in providing additional compensation for exempt employees. *See, e.g., Meza v. Intelligent Mexican Marketing, Inc.*, 720 F.3d 577, 581 (5th Cir. 2013) ("An outside salesman's extra compensation comes in the form of commissions, not overtime.") The Eleventh Circuit emphasizes commission-based compensation when determining if the outside sales representative exemption applies in a case. In *Reyes*, the Eleventh Circuit emphasized the importance of commissions when evaluating the propriety of the outside sales representative exemption. ("[S]ales brokers…were paid a commission based on their individual volume of sales…[the] position as a sales broker…qualifie[s] him as an 'outside salesman' under the FLSA."). 549 F.App'x. at 878. Other circuits also emphasize the importance of commissions for exempt employees.[4] In *Wirtz v. Charleston Coca Cola Bottling Co.*, an employee's insignificant commission-based compensation compelled the court to find him non-exempt under the FLSA. 356 F.2d 428, 430 (4th Cir. 1966); *see also Wirtz v. Edisto Farms Dairy Corp.*, 242

---

[4] Ms. Woodell has been unable to locate any Eleventh Circuit case finding an outside sales representative exemption applicable that does not rely on the employee's commission-based compensation. *See Reyes*, 549 F.App'x. 876; *Gregory*, 555 F.3d 1300; *Stevens v. SimplexGrinnell, LLP*, 190 F.App'x. 768 (11th Cir. 2006).

F.Supp. 1, 8 (E.D. S.C. 1965) (holding that an employee's primary compensation, a basic fixed salary, indicated the employee was not an outside sales representative).

Here, Ms. Woodell's compensation was not significantly affected by commission. For the first 90 days of her employment, Ms. Woodell was not even eligible to receive *any* commissions. Once she was eligible, Ms. Woodell received only sporadic commissions. While her job description reflects an illusory opportunity for Ms. Woodell to earn material commissions, no commissions appeared on her paystubs until *fourteen* months after she began employment. Soon after that, Defendants began withholding commission from her *based on her attendance* – she came into the office late and left early one day in July 2016. In the last six months of 2016, Ms. Woodell sold $137,000 worth of services, yet did not receive any commissions as purported discipline for her "inconsistency" in her clock-in/clock-out emails. Over the course of Ms. Woodell's two-year employment with Sunrise, she received just *four* commission payments.

Further, Ms. Woodell's compensation and expectations for in-office time was materially different than that of Defendants' prior outside sales

18303851v6

representatives.[5] Before hiring Ms. Woodell, Defendants employed two outside sales representatives: Henry Hall and Jennifer Brockman. Mr. Hall was paid a salary of about $60,000 (double Plaintiff's salary), and although he lived in McDonough, Georgia, he was not required to come into the Sunrise office at all. Ms. Brockman, who succeeded Mr. Hall, was paid a salary of about $70,000, plus commissions. Ms. Brockman lived in Tampa, Florida, and worked from home. Plaintiff, by contrast, was paid a starting salary of $30,000 and was *required* to come in to the Sunrise office nearly every day.

Ms. Woodell's commissions were minimal and sporadic. The lack of meaningful commissions makes Ms. Woodell's compensation more compatible with an hourly employee than an outside sales representative.[6]

  c. *Plaintiff's "exempt" work was minimal, compared to her non-exempt work.*

Ms. Woodell attended a limited number of out-of-office sales events, such as lunches, nail parties, happy hours, and approximately six sales conferences per

---

[5] For nearly the entire time Plaintiff was a Sunrise employee, Plaintiff was the only salesperson, which makes it impossible to compare her compensation to another employee classified by Defendants as an outside sales representative. (Adkins Dep. 93:15-17.) The closest reference point is Defendant Adkins himself, who was responsible for outside sales prior to and during Plaintiff's employment. (Adkins Dep. 49:16-21.)

[6] As a point of reference, in September 2019, the DOL announced that effective January 1, 2020, salaried employees will be required to be paid a minimum salary of $35,568 per year or more in order to potentially qualify for an exemption.

18303851v6

year. These limited events, however, cannot be meaningfully interpreted to be a reflection of her primary job duties when she was simultaneously being required to adhere to strict attendance requirements for being in the Sunrise office. The record clearly demonstrates that many days, Ms. Woodell was required to spend hours in the office calling potential customers and sending emails. This was reinforced by Defendants' arbitrary requirements on how Ms. Woodell use her time. Defendant Adkins required Ms. Woodell to make at least twenty-five "contacts"[7] per day that Ms. Woodell was to then document and report to Defendant Adkins each night. Defendant Adkins acknowledged that these "contacts" were not face-to-face meetings; he wanted these "contacts" to be generated *from the Sunrise office*. Like the clock-in/clock-out emails, if Ms. Woodell failed to report the daily list of contacts to Defendant Adkins, she was subject to discipline. As her outside meetings were incidental compared to her non-exempt work, Ms. Woodell does not fall within the outside sales exemption.

### C.   Ms. Woodell did not customarily and regularly spend time away from the office.

Ms. Woodell is entitled to summary judgment because she was not customarily and regularly engaged in duties away from Sunrise's place of business,

---

[7] A voicemail, an email to which she received no same-day reply, and thank-you notes did not count as "touches." (Adkins Dep. 127:1-8.)

18

as required by the outside sales exemption. 29 C.F.R. §541.500.  DOL regulations define the employer's place of business as "any fixed site, whether home or office, used by a salesperson as headquarters." 29 C.F.R § 541.502. Courts have agreed.

To be "customarily and regularly" engaged in duties away from the office requires the employee to be away with "a frequency…greater than occasional but which, of course, could be less than constant." 29 C.F.R § 541.701; *see also* Opinion Letter from DOL, Wage & Hour Div. (Jan. 25, 2007), 2007 WL 506577 ("FLSA2007-4"), a copy of which is attached hereto as Exhibit " I."

Whether an employee works outside the employer's place of business has not been a source of much legal discussion or analysis with the outside sales representative exemption. *Hantz v. Prospect Mortg. LLC*, 11 F.Supp.3d 612, 620 (E.D. Va. 2014). However, DOL opinion letters specify what "outside place of business" looks like in the real estate and mortgage loan officer context. Opinion Letter from DOL, Wage & Hour Div. (Jan. 25, 2007), 2007 WL 506575; Opinion Letter from DOL, Wage & Hour Div. (Mar. 31, 2006), 2006 WL 1094597. These letters take the view that whether an employee is away from the business should focus on the *nature*, rather than the *amount*, of time spent outside the office. *Id*.

Other courts embrace the DOL's focus on quality of time outside the office. *Freeman v. Kaplan, Inc.*, 132 F.Supp.3d 1002, 1013 (N.D. Ill. 2015). ("[T]he

record says only how much time [the employee] spent working off-campus. It says precious little about how that time was distributed."). In *Shelby v. Boxer Property Management Corporation*, the court reasoned an employee did not customarily engage in employment outside the office because the employee was directly supervised, movements monitored, and disciplined if not present. No. 4.16-CV-1549, 2019 WL 184347 (S.D. Tex. Jan. 11, 2019). Because Ms. Woodell was not customarily and regularly engaged away from Defendants' place of business, she cannot be considered an exempt outside sales representative, and Ms. Woodell is entitled to summary judgment on this issue.

### D.   Defendant Brian Adkins Is Individually Liable as an Employer Under the FLSA.

The FLSA recognizes individual liability for all "employers" who violate the provisions of its overtime and minimum wage provisions. 29 U.S.C. § 216(b).  The FLSA allows individual liability for persons who "control a corporation's financial affairs and can cause the corporation to compensate (or not compensate) employees in accordance with the FLSA." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313 (11th Cir. 2013) (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 677 (1st Cir. 1998)).

An individual will be personally liable for violations of the FLSA's overtime provisions so long as the individual constitutes an "employer" within the definition

of the FLSA. *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1159 (11th Cir. 2008). 29 U.S.C. §203(e) embraces a broad definition of the term "employer" which includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."

Establishing that a corporate officer is liable individually as an employer within the context of § 207(a)(1) is not difficult. *Lamonica*, 711 F.3d at 1313. In fact, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986). An employee need only how either (1) that the individual was involved in the day-to day operations of the business or (2) that the individual had some direct responsibility for the supervision of the employee. *Alvarez Perez,* 515 F.3d at 1160.

An individual with "operational control of significant aspects of [the business's] day-to-day functions, including compensation of employees or other matters 'in relation to an employee,'" is liable personally as an employer. *Patel*, 803 F.2d at 638. The courts of this circuit have held that control does not have to be proven directly, but rather may be inferred from an individual's exercise of general supervisory powers or control over other employees. *Lamonica*, 711 F.3d

18303851v6

at 1313.  Courts have interpreted a number of activities by owners, executives and shareholders as sufficient control over an employee to give rise to personal liability.  In particular, control over an employee's wages and control over an employee's classification as overtime exempt are all factors that courts have found significant in designating an individual as an employer. *See Goussen v. Mendez Fuel Holdings LLC*, 350 F.Supp.3d 1283, 1289 (S.D. Fla. 2018); *Hurst v. Youngelson*, 354 F.Supp.3d 1362, 1379 (N.D. Ga. 2019), respectively.

Defendant Adkins admits he exercised authority over both staff management as well as payroll. He was responsible for preparing the employee handbook which governed employee behavior, as well as for setting Ms. Woodell's salary, and her commission compensation structure. Adkins controlled employee discipline and resolution of human resources issues. In a company of just three employees (including Adkins himself), Adkins was undisputedly considered the boss.

In this case, not only was Adkins responsible for the classification of Ms. Woodell as an outside salesperson, but he was also directly responsible for her compensation and maintained significant control over nearly every aspect of Sunrise's business and operations. Similarly, in *Goussen*, the court found a business owner was individually liable as an employer because he had had decision-making authority over the finances of the business and determined his

18303851v6

employees' wages. 350 F.Supp.3d at 1289.   Not only did Defendant Adkins exercise control over the initial wages of Ms. Woodell, but he directly controlled payment of those wages by directing Sunrise's CPA to withhold payment from Ms. Woodell on multiple occasions.

Because Defendant Adkins was the chief executive officer, responsible for both the administrative and day-to-day operations of Sunrise and took an active role in both the classification and payment of Ms. Woodell, he is sufficiently involved in the operation of Sunrise's business to be individually liable as an employer.

## <u>Conclusion</u>

Therefore, based on the argument above, Woodell is entitled to Summary Judgment on her FLSA overtime compensation claim and Defendant Adkins' individual liability.  Plaintiff's overtime claim should be set for a trial with respect to the amount of damages and for her remaining claim of retaliatory discharge.

This 20th day of November, 2019.

**MILLER & MARTIN PLLC**

By:  */s/ Christopher E. Parker*
        Christopher E. Parker
        Georgia Bar No. 562152
        Elizabeth J. Marquardt
        Georgia Bar No. 944547

23

18303851v6

1180 West Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309-3407
Tel. No.: (404) 962-6100
Fax No.: (404) 962-6300
chris.parker@millermartin.com
elizabeth.marquardt@millermartin.com

**Attorneys for Plaintiff Kari C. Woodell**

## LR 7.1(D), NDGA. CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief was prepared with one of the font (Times New Roman) and point (at least 14 point) selections approved by the Court in LR 5.1C, NDGa.

This 20th day of November, 2019.

By: */s/ Christopher E. Parker*
Christopher E. Parker
Georgia Bar No. 562152

18303851v6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the below date I electronically filed **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorney of record:

> Charles R. Bridgers, Esq.
> Kevin D. Fitzpatrick, Esq.
> DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin LLC
> 3100 Centennial Tower
> 101 Marietta Street
> Atlanta, Georgia 30303
> charlesbridgers@dcbflegal.com
> kevin.fitzpatrick@dcbflegal.com

> ***Attorneys for Defendants***

This 20th day of November, 2019.

> By: */s/ Christopher E. Parker*
> Christopher E. Parker
> Georgia Bar No. 562152

18303851v6